960 F.2d 613
 69 A.F.T.R.2d 92-1022, 92-1 USTC P 50,188,
26 Collier Bankr.Cas.2d 1732,
Bankr. L. Rep. P 74,578, 17 UCC Rep.Serv.2d 337
 William H. CHRISTISON, Trustee, Plaintiff-Appellee,
v.
UNITED STATES of America, acting through its agency the
Internal Revenue Service, Defendant-Appellant.
In the Matter of HEARING OF ILLINOIS, INC., Debtor.
 No. 91-1060.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1991.
Decided March 26, 1992.
 
 Gary R. Allen, Gary D. Gray, Joel A. Rabinovitz (argued), Steven E. Cole, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., Darilynn J. Knauss, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, Ill., and J. William Roberts, U.S. Atty., Office of the U.S. Atty., Springfield, Ill., for appellant.
 Andrew Covey (argued), Baymiller, Christison, Radley & Covey, Peoria, Ill., for appellee.
 Gregg W. Bittner, Peoria, Ill., for debtor.
 Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*
 CUMMINGS, Circuit Judge.
 
 
 1
 This case arose from the filing of a complaint by William H. Christison, bankruptcy trustee for Hearing of Illinois, Inc. ("debtor") against the United States. The trustee showed that during the 90-day period before debtor filed its Chapter 11 bankruptcy petition, P.A. Bergner & Company ("Bergner's") transferred "an account receivable"[1] owing to the debtor in the amount of $23,020.50 to the United States under a notice of levy served upon Bergner's by the Internal Revenue Service ("IRS"). Citing 11 U.S.C. §§ 547 and 550, the trustee asked that the transfer be avoided and that the IRS return $23,020.50 to the trustee. Thereafter the trustee filed a motion for summary judgment for the aforesaid amount and the matter was referred by the district court to a bankruptcy judge, who rendered an opinion in favor of the trustee. 110 BR 380. The government then appealed the matter to the district court which affirmed the bankruptcy judge's decision. For the reasons given below, we reverse.
 
 Facts
 
 2
 The debtor operated a hearing aid department in a Peoria, Illinois, department store owned by P.A. Bergner & Company. Under a lease between them, the debtor paid 20% of its net receipts to Bergner's as rent and Bergner's collected all payments for debtor's goods and services. The pertinent part of the lease provided as follows:
 
 
 3
 [Bergner's] shall receive and hold in trust until an accounting is made in respect thereto, all sums collected with respect to sales made by or services rendered by [debtor], but shall not be obligated to segregate said funds or keep them in a separate account. Settlement shall be made by [Bergner's] with [debtor] for each fiscal month's business. Each month as [Bergner's] makes an accounting to [debtor] of the business of [debtor] for the preceding fiscal month, it shall, after deducting its detailed listing of proper charges and any and all sums due from [debtor] to [Bergner's], pay over to [debtor] the balance due to [it] through and including the last day of the preceding fiscal month on or before the last day of the next succeeding month.
 
 
 4
 Debtor failed to pay federal employment taxes and unemployment taxes in 1985, 1986 and 1987, causing the IRS to file liens against debtor for those taxes. On March 29, 1988, the IRS sent Bergner's a notice of levy for those taxes as to any property of the debtor that Bergner's might be holding. A month later, on April 27, 1988, Bergner's sent the IRS $23,020.50, the amount payable to debtor by Bergner's under the lease agreement and the amount involved in this controversy.
 
 
 5
 On the same day, debtor filed a petition under Chapter 11 of the Bankruptcy Code.[2] It was converted to one under Chapter 7 of the Bankruptcy Code six months thereafter, and Christison was appointed trustee. He soon filed this proceeding to recover the $23,020.50 seized by the IRS from Bergner's on the ground that the transfer constituted a preference avoidable under Section 547 of the Bankruptcy Code. In response the government contended that the transfer was not preferential because the tax claim was secured by properly filed liens.
 
 
 6
 Under Section 545(2) of the Bankruptcy Code (11 U.S.C. § 545(2)) a trustee may avoid a statutory lien not enforceable at the commencement of the bankruptcy case against a bona fide purchaser. The trustee argued that the IRS had seized "money" held in trust pursuant to the lease and that under the Internal Revenue Code (26 U.S.C. § 6323(b)(1)) the tax lien was not valid with respect to a bona fide purchaser of "money."
 
 
 7
 The bankruptcy court decided for the trustee on the ground that under Section 6323(b)(1) a tax lien is not valid against securities, which are defined by Section 6323(h)(4) as including money. The district court affirmed on the ground that the funds held by Bergner's were being held in trust for the debtor and therefore were "money," so that the tax lien could be defeated by the bankruptcy trustee, a hypothetical purchaser[3] under Section 545(2) of the Bankruptcy Code and Section 6323(b) of the Internal Revenue Code.Discussion
 
 
 8
 To avoid the government's lien on the debtor's property, the trustee relies on Section 545(2) of the Bankruptcy Code, which permits such avoidance to the extent it is not enforceable against a bona fide purchaser.[4] In turn, Section 6323(b)(1) of the Internal Revenue Code provides that an IRS lien is not valid with respect to bona fide purchasers of "securities." The term "security" is defined in Section 6323(h)(4), which provides as follows:
 
 
 9
 Security.--The term "security" means any bond, debenture, note, or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.
 
 
 10
 The trustee contends that the receipts held by Bergner's in its own account were the debtor's "money," so that the government's lien fails. We cannot agree that the amounts owed by Bergner's to the debtor under the above-quoted lease constitute "money" within the definition of security in this part of the Internal Revenue Code.
 
 
 11
 At the outset, it must be clarified what a hypothetical bona fide purchaser like the trustee would be purchasing in this case. In this hypothetical transaction, a bona fide purchaser would buy from the debtor its right to receive a payment due at the end of the month from Bergner's under the lease contract. In such a transaction, in accordance with standard contract principles, the debtor would simply assign the benefits of its contract to the purchaser for consideration. The question to be faced is whether such an assignment can be considered an assignment of money.
 
 
 12
 All the terms in Section 6323(h)(4), except for the more ambiguous term "money," clearly pertain to stocks or instruments that can be freely negotiated. The definition of security in this section can be divided into three parts: freely tradable securities, negotiable instruments (by definition freely negotiable), and money, which of course is also negotiable if interpreted to mean cash in hand. See First Nat'l Bank of Minneapolis v. United States, No. 3-85-1274, 1987 WL 149720, at *1-*2, 1987 U.S.Dist. LEXIS 14712, at *3-* 4 (D.Minn. Oct. 23, 1987). Interpreting the term "money" in Section 6323(h)(4) to include a generalized right to receive money would bring non-negotiable instruments as well as accounts receivable within the ambit of the definition. Congress would not have listed negotiable instruments specifically in the statute if it intended to include any right to receive money. The structure of Section 6323(h)(4) therefore strongly indicates a negotiable definition for the term "money."
 
 
 13
 Accordingly, at least two circuits have specifically adopted a restrictive definition of money under this section. As Judge Chambers aptly explained in Worley v. United States, 340 F.2d 500, 502 (9th Cir.1965), "money" under the definition of security in Section 6323(h)(4) does not include the right to receive money but is "the kind that one could bite, feel or pinch." And as explained in United States v. First National Bank of Memphis, 458 F.2d 560, 563 (6th Cir.1972), Congress carefully limited the definition of a security in Section 6323(h)(4) to negotiable instruments or money itself and did not intend to open the door to evidence of a right to receive money such as involved here. See also United States v. Bank of Celina, 721 F.2d 163, 169 (6th Cir.1983). Other courts are in agreement. Rushmore State Bank v. Kurylas, Inc., 424 N.W.2d 649, 662-663 (S.D.1988) (money in an escrow account not money under Section 6323(h)(4)); First Nat'l Bank of Minneapolis, supra (interest in an asset coverage trust account not money under Section 6323(h)(4)); In re Debmar Corp., 21 B.R. 858 (Bankr.S.D.Fla.1982) (neither accounts receivable nor checking accounts are money under Section 6323(h)(4)); cf. United States v. Asher, 54-2 U.S.Tax Cas. par. 9454 (S.D.Cal.1954) (commercial checking account not a security under predecessor to Section 6323(h)(4)).
 
 
 14
 This approach to Section 6323(h)(4) is well supported by the statute's legislative history. The predecessor to Section 6323(b) of the Internal Revenue Code was added in 1939 to overrule a district court case that held that the government's tax lien continued to attach to shares of stock sold to a bona fide purchaser. The House Committee on Ways and Means thought that it was inequitable for the statute to provide that the filing of a notice of a tax lien constitutes notice as regards securities. The examples given were when a broker purchased securities for a customer or when deals concerned over-the-counter and direct transactions in securities. As the committee explained, an attempt to enforce such liens would impair the negotiability of securities and seriously interfere with business transactions. Section 6323(b) was therefore added to remove an existing hardship. H.R.Rep. No. 855, 76th Cong., 1st Sess. at 26, 1939-2 Cum.Bull. 504, 524. Without this addition to the Internal Revenue Code, the customers receiving money from a delinquent taxpayer would be taking it subject to a government lien, an impossible situation. Consequently Section 6323(b) was enacted so that the government's lien would not prevail against a bona fide purchaser of freely transferable or negotiable property such as bonds, debentures, notes, checks and currency.
 
 
 15
 The purpose of the 1939 statutory addition was well explained in Malkin v. United States, 645 F.Supp. 229, 230-231 (S.D.N.Y.1986):
 
 
 16
 The reason for the distinction between securities and other types of property is the recognition that stocks and bonds are, and should be, freely and easily marketable. Purchasers buy securities on stock and bond markets through brokers generally without even learning who their seller is. If such a purchaser ran the risk of tax liens filed against the seller's property, securities markets could no longer function with freedom; the purchase of stocks would become an expensive transaction involving representations and warranties, attorneys on both sides, searches of securities filings, etc. In contrast, transactions in most other types of property have traditionally involved face to face dealing, negotiation, and higher transaction costs. It is more reasonable in such cases and more consistent with generally shared expectations to make purchasers responsible for filed tax liens.
 
 
 17
 By viewing Section 6323(h)(4) as a whole, it is plain that Congress was concerned with freely transferable pieces of property rather than the right to receive money like the one provided in the Bergner's-debtor lease. The trustee does not suggest that debtor's right to payments under the lease was freely transferable or negotiable.
 
 
 18
 Contrary to the trustee's suggestion, it is not relevant whether Bergner's is considered a debtor or a trustee with regard to the monies owed to Hearing of Illinois at the end of the month. In either case, a hypothetical bona fide purchaser would be purchasing a right to receive money that is not within the Section 6323(h)(4) definition of money. Whether this right is denominated an account receivable or a right arising from a trust arrangement under state law is not important.
 
 
 19
 Although the lease between Bergner's and the debtor gave the debtor a right to receive payments, this of course was not money in hand under the ordinary meaning of the term. By analogy this is reinforced by considering comparable terms in the Uniform Commercial Code. Money is defined in U.C.C. Section 1-201(24) as "a medium of exchange authorized or adopted by a domestic or foreign government." Under the U.C.C., "money" does not mean the right to receive money but is limited to currency. Here the debtor's property right to receive a net lump sum each month, from unsegregated funds held by Bergner's, would be considered a "general intangible" under U.C.C. Article 9-106 rather than "money." See In re Allen, 888 F.2d 1299, 1302 (10th Cir.1989). In that case, if the debtor's property interest had been "money," the bankruptcy trustee would have been able to avoid the transfer as a preference. Thus under both the U.C.C. and the Internal Revenue Code, if the property in question is money rather than a general intangible, a good faith purchaser of money defeats a lien on that money, but not if the property in question is as here merely the right to receive funds at the end of each month. Finally, many bankruptcy courts also hold that a non-reified right to receive money is a general intangible, not money.[5]
 
 
 20
 In conclusion, the debtor's right under paragraph 7 of the lease with Bergner's is not "money" as covered by Section 6323(h)(4). The result might be different if Bergner's had held the funds it received for debtor without depositing them in its own account, but it did not. Instead accounts were not resolved until Bergner's ascertained the balance due the debtor through the last day of the preceding month and paid it by check on or before the end of the next month. In no way can debtor's interest be considered a negotiable interest (much less money) within the Congressional intent in enacting Section 6323(h)(4) of the Internal Revenue Code. Consequently the government's federal tax lien prevails over debtor's property rights under the lease.
 
 
 21
 Judgment reversed.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 This was the term the trustee used in his complaint (R. 10 at 1)
 
 
 [2]
 Neither party argues that the timing of debtor's bankruptcy filing vis-a-vis Bergner's payment to the IRS is relevant
 
 
 [3]
 The government has abandoned an argument that it made before the district judge that the trustee did not qualify as a purchaser under Section 6323(b)(1)(A) and therefore was not entitled to avoidance under Section 545(2) of the Bankruptcy Code
 
 
 [4]
 The trustee does not argue that the satisfaction of the federal tax lien had a preferential effect because under the Chapter 7 liquidation the tax lien would have been subordinated to certain priority claims. See In re Debmar Corp., 21 B.R. 858, 862 (Bankr.S.D.Fla.1982) (rejecting the argument but agreeing "that the literal wording of §§ 547 and 724(b) can reach that result.")
 
 
 [5]
 See In re Bucyrus Grain Co., 67 B.R. 336 (Bankr.D.Kan.1986), rev'd on other grounds, 127 B.R. 45 (D.Kan.1988); In re Shiflett, 40 B.R. 493 (Bankr.W.D.Va.1984); In re Cosner, 3 B.R. 445 (Bankr.D.Or.1980); Cissell v. First Nat'l Bank of Cincinnati, 476 F.Supp. 474 (S.D.Ohio 1979)