In re GUYANA DEVELOPMENT
CORPORATION, Debtor.

David ASKANASE, Trustee,

v.

UNITED STATES of America.

Bankruptcy No. 93–41444–H5–11.
Adv. No. 95–4224.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 29, 1995.

Ruth E. Salek, Houston, TX, for debtor.

Marvin Isgur, Houston, TX, for trustee.

Louise P. Hytken, Dallas, TX, for the U.S.

### *AMENDED ORDER*

KAREN KENNEDY BROWN,
Bankruptcy Judge.

Before the Court is the combined contested matter and adversary proceeding commenced by David Askanase, Chapter 11 Trustee (the "Trustee") of Guyana Development Corporation ("GDC") to determine the extent, validity, and priority of the claims of the United States. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding.

It is undisputed that the United States properly filed its statutory prepetition notices of tax lien with respect to the assets of GDC. The trustee urges, however, that the liens and levies of the United States are avoidable or inapplicable for the following reasons:

1. Non–Existent Foreign Asset Liens. The trustee urges that the United States' liens based on 26 U.S.C. § 6321 cannot apply to assets located outside of the United States. The trustee urges that neither the Constitution, nor principles of international sovereignty permit the assertion of lien rights over foreign assets.

2. Avoidability of Foreign Asset Liens. The trustee urges that even if section 6321 imposed foreign asset liens, such liens are unenforceable, and therefore, avoidable under 11 U.S.C. § 545.

3. Avoidability of Domestic Liens. The trustee asserts that under 26 U.S.C. § 6323, liens against stock or money are avoidable.

4. Avoidability of Domestic Levies. The trustee urges that the IRS levies are voidable preferences under 11 U.S.C. § 547 because they attached within a few days of the commencement of the GDC bankruptcy and, if allowed to stand, would entitle

the United States to receive more than it would receive in a Chapter 7 liquidation.

The trustee also contends that a chapter 11 liquidating plan can: (i) require the subordination of an unsecured penalty claim for taxes; and (ii) direct the application of liened and levied proceeds to the payment of taxes prior to payment of penalties. No dispute exists that penalty claims would be subordinated in a chapter 7 bankruptcy. *See* 11 U.S.C. § 726(a)(4). It is also undisputed that a chapter 11 reorganization plan can direct the application of liened or levied assets. *United States v. Energy Resources, Inc.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). The trustee believes that rational bankruptcy policy precludes an exception for tax penalty claims in a chapter 11 liquidating plan.

## I. LIEN ON FOREIGN ASSETS

■ Approximately $18,000,000 [1] in assets now held by the trustee were located outside U.S. borders on the petition date. The bulk of these assets were bank deposits located in London [2], the Isle of Man, and Switzerland.

The trustee urges that, absent evidence to the contrary, it is presumed Congress intends legislation to apply only domestically and not internationally. *Seville v. Martin Marietta Corp.*, 638 F.Supp. 590 (D.Md. 1986). The trustee contends the "Act of State" doctrine is the only rational course available; otherwise, Congress would assert its authority with no ability to control the outcome. *Bandes v. Harlow & Jones, Inc.*, 826 F.Supp. 700 (S.D.N.Y.1993).

The only apparent case on point to any degree is *United States v. First Nat'l City Bank*, 321 F.2d 14, 23 (2nd Cir.1963), rehearing en banc, 325 F.2d 1020 (2nd Cir.1964), rev'd on other grounds, 377 U.S. 951, 84 S.Ct. 1629, 12 L.Ed.2d 496 (1965). In *First Na-*

*tional* the United States sought to impose a tax lien on taxpayer's foreign assets held by respondent's subsidiary bank in Uruguay. The district court enjoined transfer of the foreign assets pursuant to 26 U.S.C. § 7402(a), despite the absence of personal service on the taxpayer. Both the Second Circuit panel and en banc court held that a lien under 26 U.S.C. § 6321 did not attach to overseas assets. Since the plaintiff had not obtained jurisdiction over the taxpayer, the court of appeals concluded that the injunction should be denied.

Bypassing the in rem lien issue entirely, the Supreme Court reversed, finding that the United States might eventually achieve personal service over the taxpayer under New York state law. Consequently, the Supreme Court held that injunctive relief was appropriate against the respondent/domestic bank over which the court had jurisdiction in order to preserve the foreign assets for possible collection after judgment.

In analyzing the relevance of *First National* for the case at bar, the United States argues that both the Second Circuit and the Supreme Court opinions assume that once personal jurisdiction exists over a taxpayer, the government is entitled to enforce its liens against a taxpayer's assets, domestic or foreign. The government notes that undisputed personal jurisdiction over the debtor should entitle it to enforcement of its statutory lien.

While the trustee does not dispute that personal jurisdiction over the taxpayer absent bankruptcy entitles the United States to enforce its liens by injunctive relief against the taxpayer personally, the trustee urges that in the *First National* case the Supreme Court carefully avoided extending liens derived from 26 U.S.C. § 6321 to foreign assets. Since the Supreme Court reversed on other grounds, the trustee relies on the anal-

---

1. Exhibit "A" to the trustee's memorandum of law contains a list of the assets that have been liquidated. Of the amounts listed on Exhibit "A", approximately $2,000,000 was held in foreign accounts in Edward Callan's name. To avoid double-counting, these assets are listed only in the Edward Callan column. Additionally, approximately $850,000 of foreign assets (the two London flats) have not been liquidated as of the date of the motion.

2. During the course of the bankruptcy, approximately $9.5 million located at Arab Banking Corporation in London was illicitly transferred by Edward Callan to Germany and then on to Luxembourg. The trustee was able to stop the monies in a Luxembourg account and after Luxembourg judicial proceedings, successfully returned most of the monies to the United States.

ysis of the court of appeals which concluded that absent evidence of contrary Congressional intent, section 6321 applies only within the territorial limits of the United States and that the revenue rule precludes the enforcement of a tax claim in a foreign country. Since there is no evidence in the language of section 6321 suggesting foreign application and since the tax claim could not have been enforced in any European country which held debtor's assets on the date of filing, any tax lien of the United States was not a "charge against or interest in property to secure payment of a debt or performance of an obligation" as required by 11 U.S.C. § 101(37). In sum, the trustee urges although the United States might have enforced its lien or claims against the debtor personally prepetition by mandatory injunction under 26 U.S.C. § 7402(a), since there was no injunction compelling debtor or debtor's agents to return foreign assets to this country, its alternate enforcement powers do not create extraterritorial reach for otherwise domestic government tax liens.

■ Nevertheless, this Court finds that 26 U.S.C. § 6321 is drafted in the broadest possible language to reach all of debtor's property wherever located.[3] Moreover, pursuant to section 6323(f)(2)(B), for purposes of perfection of a tax lien created under section 6321, debtor's personal property assets are deemed to be situated at its residence which is the place at which its principal executive office is located. The trustee does not contend that debtor's principal executive office was in any locale other than Texas. The Court finds that section 6323(f)(2)(B) is intended by Congress to reach assets of taxpayers both foreign and domestic. This is particularly so in view of the specific allowance for perfection of government liens where the residence of the taxpayer is without the United States. *Id.* The Court concludes that the lien of the IRS extends to all of debtor's property, both foreign and domestic.

## II. AVOIDANCE OF FOREIGN ASSET LIENS

■ Assuming that Congress meant to impose a lien on foreign assets, the trustee argues that it is a well-settled principle of international law that one nation's courts will not enforce the tax claims of another jurisdiction. The United States courts will not enforce the tax claims of foreign nations. *Her Majesty Queen in Right of Province of British Columbia v. Gilbertson,* 597 F.2d 1161 (9th Cir.1979). Similarly, foreign nations will not enforce the tax claims of the United States. *See, e.g., Government of India v. Taylor,* 1 Eng.Law Rep. 292 (House of Lords 1955); *In re Tucker,* Manx Law Rep. 1987–89, Ch.D. (Chancery Division 1988); *Peter Buchanan, Ltd. v. McVey,* The Law J., September 8, 1950 (High Court, Dublin 1950); Richard E. Smith, *The Nonrecognition of Foreign Tax Judgments: International Tax Evasion,* 1981 U.Ill.L.Rev. 241 (1981); Recent Cases, *Conflict of Laws—Judgments—Canadian Court Will Not Entertain Suit to Enforce United States Tax Judgment—United States v. Harden (Can.1963),* 77 Harv. L.Rev. 1327 (1964). In determining the validity of liens to enforce a foreign bankruptcy judgment, the law of the jurisdiction where the property is located will be utilized. *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341 (2d Cir.1992), *cert. denied, Koreag Controle et Revision, S.A. v. Refco F/X Associates, Inc.,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992).

■ The trustee urges that the lien rights of the United States are avoidable under 11 U.S.C. § 545(2) because the asserted lien is not enforceable in foreign jurisdictions. *United States v. Ross,* 196 F.Supp. 243 (S.D.N.Y.1961), *modified,* 302 F.2d 831 (2d Cir.1962). The focus of section 545(2), however, is whether the lien is unenforceable as to a theoretical bona fide purchaser not whether it is unenforceable due to jurisdictional limits of United States law. A bona fide purchaser under Texas law is ordinarily

3. § 6321. **Lien for taxes**
    If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 26 U.S.C. § 6321.

subject to a properly filed notice of tax lien. *See Prewitt v. United States*, 792 F.2d 1353 (5th Cir.1986); *United States v. Creamer Industries, Inc.*, 349 F.2d 625 (5th Cir.1965), *cert. denied*, 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965); *but see United States v. V & E Engineering & Const. Co.*, 819 F.2d 331 (1st Cir.1987); *Hamilton v. United States*, 806 F.Supp. 326 (D.Conn.1992). The Court declines to conclude that the bona fide purchaser contemplated by 11 U.S.C. § 545(2) is imbued with extraterritorial powers unencumbered by a properly filed domestic tax lien. The lien of the IRS is not avoidable by the trustee under 11 U.S.C. § 545(2).

## III. AVOIDANCE OF DOMESTIC LIENS

### A. The trustee as a "purchaser" under section 6323.

■ Section 6321 of the Internal Revenue Code imposes a general lien against a taxpayer's property. Section 6323 of the Internal Revenue Code removes the section 6321 lien against certain assets. The trustee urges that: (1) a section 6321 lien is not enforceable against shares of stock held by the GDC estate at the commencement of a bankruptcy case, and (2) the section 6321 lien is not enforceable against bank accounts held by the GDC estate at the commencement of a bankruptcy case.[4] The IRS urges that the trustee is not a purchaser under 26 U.S.C. § 6323 and cannot take advantage of the

exception to its lien on stock. 26 U.S.C. § 6323.

Although section 545(2) of the Bankruptcy Code gives the trustee the rights of a bona fide purchaser, a footnote in a recent decision holds that a section 545 purchaser is not equivalent to a section 6323 purchaser. *United States v. Hunter (In re Walter)*, 45 F.3d 1023, 1031, n. 7 (6th Cir.1995). This Court declines to follow the *Walter* analysis and finds that the trustee as a bona fide purchaser under 11 U.S.C. § 545 meets the requirements of a purchaser under section 6323. The Court finds that the trustee is deemed to have paid full and adequate consideration in his capacity as a bona fide purchaser.

As the trustee explains in his brief, "The excerpt of the legislative history contained in the *Walter* opinion is from the Senate report. The Senate bill stripped a bankruptcy trustee of his rights as a section 6323 purchaser. Had the Senate bill been adopted, the *Walter* conclusion would have been correct. However, the House bill was adopted. The foregoing legislative statement of the House reflects the legislative intent to maintain the trustee's status as a section 6323 purchaser." (Trustee's Memorandum of Law Regarding the Claim of the United States of America at 18.) *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. (1977). The Court finds persuasive the trustee's argument that Congress specifically retained the trustee's section 6323 status.

---

**4.** Section 6323 provides in pertinent part:
(a) Purchases, holders of security interests, mechanics lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.
(b) Protection for certain interests even though notice filed.—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—
(1) Securities.—With respect to a security (as defined in subsection (h)(4)—
(A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien; ...
....
(h) Definitions.—For purposes of this section and section 6324 — ...

(4) Security.—The term "security" means any bond, debenture, note, or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.
....
(6) Purchaser.—The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without judicial notice.

### B. Avoidance of the lien on stock

The plain language of section 6323 provides that the section 6321 lien is invalid against a purchaser of a security. Inasmuch as a security includes a "share of stock", section 6321 liens are invalid against purchasers of stock. *In re O'Neil*, 177 B.R. 809, 814 (Bankr.S.D.N.Y.1995); *Sierer v. United States (In re Sierer)*, 121 B.R. 884, 887 (Bankr.N.D.Fla.1990), *aff'd in part, rev'd in part*, 139 B.R. 752 (N.D.Fla.1991). The Court concludes that the IRS lien is invalid as to shares of stock belonging to the estate.

### C. Avoidance of lien on money

■ Section 6323 also invalidates liens against money. The trustee urges that debtor's bank accounts constitute money. The Court concludes, however, that deposit accounts are not money because they are not freely negotiable. A bank account is equivalent to the right to receive money rather than money itself. The right to receive money is not included in the definition of a security under 26 U.S.C. § 6323(h)(4). *See Christison v. United States*, 960 F.2d 613, 615–616 (7th Cir.1992) and the cases cited therein. "Section 6323(h) was enacted so that the government's lien would not prevail against a bona fide purchaser of freely transferable or negotiable property such as bonds, debentures, notes, checks and currency." 960 F.2d at 616. The Court concludes that tax liens attach to deposit accounts.

### IV. AVOIDANCE OF LEVIES

■ The trustee urges that the levies imposed by the United States are avoidable as preferences pursuant to 11 U.S.C. § 547. At issue is whether the last element of 11 U.S.C. § 547(b) is satisfied, i.e., whether the levy allows the IRS to receive more than it would have received in a chapter 7 proceeding. In a chapter 7 proceeding the lien of the IRS securing penalties would be avoided under 11 U.S.C. § 724(a). Therefore, in a chapter 7 the liens of the IRS would secure a debt of approximately $18 million rather than $24 million with the unsecured difference to receive distribution under 11 U.S.C. § 726(a)(4) after other unsecured creditors. Application of levied sums to the penalty portion of the IRS would compensate the IRS for a claim which would be unsecured in chapter 7. Such attribution of the levied sums entitles the IRS to receive more on that portion of its claim than it would receive through distribution in a chapter 7. The levies of the IRS are avoided. However, since in a chapter 11 case the lien of the IRS securing penalties is not subject to avoidance under 11 U.S.C. § 724(a), the United States is entitled to treatment of its secured claim under the provisions of 11 U.S.C. § 1129. The claim of the IRS is secured by its liens even though its levies are avoided.

### V. THE PLAN

In order to effect a distribution to the general unsecured creditors the trustee seeks to require the United States to first apply funds subject to a lien to taxes and interest citing *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). The trustee believes that this application will utilize all of the funds subject to the United States' lien and leave a residual for unsecured creditors after the payment of the balance of the priority taxes. In light of the Court's resolution of the previous matters, however, the Court reserves this issue for further hearing on December 14, 1995 at 4:00 p.m. on the entry of judgment in this matter.