In re Beverly A. **STRAIGHT** and Milton L. Straight, Debtors.

Beverly A. **STRAIGHT** and Milton L. Straight, Plaintiffs,

v.

**FIRST INTERSTATE BANK OF COMMERCE, and Internal Revenue Service, Defendants.**

**Bankruptcy No. 95–10007.**
**Adv. No. 95–1005.**

United States Bankruptcy Court,
D. Wyoming.

June 20, 1996.

Stephen R. Winship, Winship & Winship, P.C., Casper, WY, for Beverly A. Straight and Milton L. Straight.

Stuart S. Healy, Sheridan, WY, for First Interstate.

Donald R. Wrobetz, Assistant U.S. Attorney, District of Wyoming, Cheyenne, WY, for IRS.

### DECISION ON MOTIONS FOR SUMMARY JUDGMENT

PETER J. McNIFF, Bankruptcy Judge.

This case came before the court on the amended complaint of the plaintiffs/debtors, Milton L. and Beverly Ann Straight, and the motions for summary judgment filed by the Straights and both defendants, the Internal Revenue Service (IRS) and the First Interstate Bank of Commerce (FIB). On February 13, 1996, the court held a hearing on the motions. After a review of the record and

pleadings on file, and upon consideration of the arguments of the parties, the court finds and rules as set forth herein.

### JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F) and (K). The motions are brought pursuant to Fed.R.Civ.P. 56(a) and (b), made applicable in adversary proceedings by Fed.R.Bankr.P. 7056.

The debtors' amended complaint states claims for a declaratory judgment under 28 U.S.C. § 2201 and to avoid liens. The IRS argues that this court is without jurisdiction under the Declaratory Judgment Act to determine those issues on which the debtors seek a declaratory judgment. The court disagrees. Even if the remedy of a declaratory judgment were necessary to resolve this case, an actual controversy exists and the matters which the debtors seek to have resolved fall within the provisions of 11 U.S.C. § 505. As such, they are excluded from the restrictions of § 2201(a). *See In re Border,* 116 B.R. 588, 590 (Bankr.S.D.Ohio 1990).

### UNDISPUTED FACTS

The Straights are residents of Sheridan County, Wyoming. For the purposes of this case, the property of the Straights has at all times been located in Sheridan County, Wyoming.

Mrs. Straight is engaged in the road construction flagging business under the dba Centerline Traffic Control and Flagging. She borrowed funds from the First Interstate Bank of Commerce in Sheridan, Wyoming, to operate the business. On May 7, 1993, she gave FIB a promissory note for $35,000. The note was secured by collateral identified in a Commercial Security Agreement signed the same date. The Security Agreement was filed by FIB, in lieu of a financing statement, on May 12, 1993 in the Office of the Sheridan County Clerk.

The Security Agreement granted FIB a security interest in items of collateral identified as equipment and inventory, which were

listed in the attached Schedules A through D. The lists were of various tools, traffic signs and traffic control devices, and a mobile office. The equipment is valued in the debtors' schedules at $84,239.36 (office equipment and machinery).

In her business operations, Mrs. Straight entered into at least two subcontracts with general highway construction contractors. One of these was a March 23, 1993 contract with Nicholls & Lewis, Inc. On May 27, 1993, Mrs. Straight entered into a Standard Sub-contract Agreement with another highway contractor, Lobo, Inc. and Carr Construction, Inc., A Joint Venture (Lobo/Carr). The parties do not dispute that Mrs. Straight assigned the subcontract payments to FIB, although the assignments were not provided to the court as FIB indicated.

Performance under both contracts was completed. Payments due under the Lobo/Carr contract are valued in the debtors' chapter 13 plan at $144,500. According to Mrs. Straight's affidavit however, Lobo/Carr owes Mrs. Straight $115,536.

FIB extended credit to Mrs. Straight under a number of promissory notes dated from June 8, 1993 to October 25, 1994. The amount of the FIB claim as of the date the Straights filed their chapter 13 voluntary petition, January 13, 1995, is $150,351.21.

On September 13, 1994, the IRS filed a Notice of Federal Tax Lien in the Office of the Sheridan County Clerk for unpaid employment taxes totaling $79,134.23. The IRS claim as of the date of the bankruptcy filing is $119,990.62.

The IRS did not file its Notice of Federal Tax Lien in the office of the Secretary of State of Wyoming. FIB did not file an assignment of either subcontract in any location. FIB did not file its May 6, 1993 security agreement or a financing statement with the Secretary of State of Wyoming.

Straights own property other than the rights to contract payments and equipment, which is subject to the federal tax lien, including their home. There is a first lien on the residence of $15,113, but some equity exists.

On December 30, 1994, FIB was paid $16,-605.04 from the Lobo/Carr contract payments. The payment was made upon stipulation of the parties from funds held by the District Court for the Fourth Judicial District of Wyoming. On January 13, 1995, the Straights filed their voluntary petition for relief under chapter 13. The payment was within 90 days of the filing of the bankruptcy petition.

## DISCUSSION

The standards for entry of summary judgment are frequently stated. Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *In re Baum,* 22 F.3d 1014, 1016–1017 (10th Cir.1994). A fact is material if it could affect the outcome of the claim. An issue is genuine if it presents sufficient disagreement to be submitted to the trier of fact, and the trier of fact could return a verdict for the nonmoving party. *Farthing v. City of Shawnee, Kan.,* 39 F.3d 1131, 1135 (10th Cir.1994). The court must review the record and make all reasonable inferences in favor of the party opposing the motion. *Id.*

*Standing*

■ The threshold issue is whether a chapter 13 debtor has standing and/or the requisite statutory authority to assert the avoiding powers of a trustee found in various provisions of the bankruptcy code. In their original complaint, the Straights sought a determination of the relative priorities of the FIB consensual lien and the IRS tax lien. The action was necessary for the debtors to value the secured claims in a chapter 13 plan. In this court's view, a chapter 13 debtor has standing to pursue claim valuation and to bring an action for a determination of the relative priorities of competing liens for plan payment purposes.

Subsequently, the debtors amended their complaint to include claims for lien avoidance under §§ 544 & 545 and the recovery of an alleged preferential transfer under § 547. Section 103(a) makes the avoiding powers of chapter 5 applicable in cases under chapter 13. Nonetheless, who will exercise these powers in chapter 13 is anything but clear.

The power to avoid a lien or transfer under §§ 544, 545, or 547 is granted to the "trustee." In chapter 13, the trustee's specific duties do not include using the lien avoiding powers of chapter 5. Nor does the enumerated list of the debtor's powers which is set forth in § 1303.

The reported decisions, relying on statutory construction, reach different conclusions. Early decisions were split into at least two camps. Some courts held that only a chapter 13 trustee could use the avoiding powers. *In re Walls*, 17 B.R. 701 (Bankr.S.D.W.Va.1982). Others held that the debtor could exercise these powers. *In re Ware*, 99 B.R. 103 (Bankr.M.D.Fla.1989); *In re Ottaviano*, 68 B.R. 238 (Bankr.D.Conn.1986); *In re Hall*, 26 B.R. 10 (Bankr.M.D.Fla.1982) (case receded from and position reversed by same author in *In re Tillery*, 124 B.R. 127 (Bankr. M.D.Fla.1991)).

The present majority rule holds that debtors may use the avoiding powers for their own benefit only within the narrow limits of § 522(h), i.e., if the property would have been exempt but for the transfer and the trustee does not act. Otherwise, the majority holds that the strong arm powers belong exclusively to the chapter 13 trustee. *In re Hill*, 152 B.R. 204, 206 (Bankr.S.D.Ohio 1993); *In re Davis*, 148 B.R. 165 (Bankr.E.D.N.Y.1992), *aff'd*, 169 B.R. 285 (E.D.N.Y.1994).

In addition to statutory construction, most of the decisions are also supported by policy considerations. For example, given the trustee's reluctance in most cases to pursue transfers, the debtor should be able to redress any alleged wrongs.

On the other hand, the strong arm powers are obviously intended to enhance the estate, not to increase the personal assets of the debtor. This policy supports a rule that only a trustee can use the avoiding powers outside of § 522(h). Some courts have stated that if a debtor is authorized to exercise avoiding powers, the debtor must do so for the benefit of the estate. *In re Jernigan*, 130 B.R. 879 (Bankr.N.D.Okla.1991).

 A number of factors are important in this case. In some respects, the case is more similar to a chapter 11 case. The debtor has made no plan payments since the beginning of the case and, as the IRS points out, that alone could make these issues moot.

Also, the chapter 13 trustee has refused to pursue this litigation, having no apparent motivation to recover preferential transfers or to avoid liens. Obviously, if the court rules against the debtors on this question, they can convert their bankruptcy case to a chapter 11 or chapter 7 case. The adversary proceeding will likely go forward. And finally, the court believes it is inequitable for a creditor with an unperfected lien or as the recipient of a preferential transfer to retain an advantage over the other creditors.

Therefore, the court holds that the Straights may prosecute these claims so long as any recovery is deposited with the chapter 13 standing trustee for distribution to and for the benefit of the unsecured creditors. As to the claims brought pursuant to § 522(h), the court holds that the statutory language of that section grants the debtors' standing to avoid liens which impair their exemptions.

*Perfection and Priorities*

The positions of the parties with regard to the lien priorities should first be summarized. FIB argues that its lien in the Lobo/Carr proceeds is perfected, is first in time, and is, therefore, prior to the IRS. The debtors argue that FIB did not properly file its financing statement and, therefore, does not have a perfected lien in the Lobo/Carr proceeds. The debtors also argue that the IRS lien is improperly filed, making it avoidable as to some items of property. The IRS contends that the FIB lien in the Lobo/Carr proceeds is not perfected and, therefore, the IRS lien has priority.

The IRS lien: The debtors allege that the IRS lien may be avoided under § 545(2) which states that "the trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien ... is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser ..." First, Straights contend that the IRS lien is not perfected as to the debtors' vehicles and accounts receivable (Lobo/Carr contract payments) because the IRS did not comply with the filing require-

ments of the Uniform Commercial Code, found in Wyo.Stat. §§ 34.1–9–302 & 34.1–9–401 (1991).

▇▇▇ The existence and priority of a federal tax lien are determined in accordance with federal law. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). A federal tax lien arises when a tax is unpaid after demand. 26 U.S.C. § 6321. Under § 6323(a) of the Internal Revenue Code (IRC), a federal tax lien becomes valid against third parties when notice is filed in accordance with § 6323(f). To perfect a tax lien, the IRC defers to state law to designate the place and manner of filing. *In re Henderson,* 133 B.R. 813, 815 (Bankr.W.D.Tex.1991). In this case, the parties agree that the applicable law is the law of Wyoming, the state in which the personal property at issue is situated. 26 U.S.C. § 6323(f)(1)(A)(ii).

▇▇▇ Wyoming has enacted the Uniform Federal Lien Registration Act which requires that, excluding persons not deceased, corporations, partnerships or trusts, a federal tax lien is filed in the office of the county clerk of the county where the person against whose interest the lien applies resides at the time of filing of the notice of lien. Wyo.Stat. § 29–6–201 et seq. (Supp.1994). One determines whether or not the IRS has properly filed its notice of tax lien in accordance with this statute.

▇▇▇ The court disagrees with the debtors' position. The IRS is not required to comply with the Uniform Commercial Code when filing its notice of federal tax lien. By its terms, the UCC does not apply to statutory liens. Wyo.Stat. §§ 34.1–9–102(b) & 34.1–9–104(a)(i) (even assuming that a federal tax lien is a consensual "security interest" under the UCC). *Frontier Federal Sav. & Loan Ass'n v. Commercial Bank,* 806 P.2d 1140, 1142 (Okla.App.1990).

The debtors' policy arguments are not convincing. The IRC protects the very vehicle purchasers about whom the debtors express concern. A federal tax lien does not arise out of a commercial transaction as implied by the debtors, but rather occurs by operation of federal law. Finally, the case law cited by the debtors, even if correct, is applying the law of other states and as such, is inapposite.

▇▇▇ In this case, the IRS properly filed its notice of federal tax lien in the Office of the County Clerk of Sheridan County, the residence of the Straights at the time the notice was filed. Wyo.Stat. § 29–6–204(c)(iv). The IRS tax lien was properly filed and cannot be avoided under § 545(2) as an unperfected lien.

Second, Straights allege that the status of a § 545 hypothetical bona fide purchaser is effective under 26 U.S.C. § 6323(b) to avoid the lien on some specific items of property. That section of the IRC provides exceptions to the validity of the tax lien by protecting a "person who, for adequate and full consideration in money or money's worth" and without knowledge of the lien, purchases property from the taxpayer. 26 U.S.C. § 6323(h)(6). In response, the IRS did not confront this issue head on, but argued only the standing issue.

In the case of *In re Walter,* 45 F.3d 1023 (6th Cir.1995), the court addressed this question in the context of motor vehicles. The IRC requires that the bona fide purchaser also have possession of the vehicles to be protected. The *Walter* court rejected the same cases cited by the debtors here and held that the hypothetical bona fide purchaser under § 545(2) does not in all circumstances satisfy the stricter standard of a bona fide purchaser under § 6323(b)(2). *Id.* at 1034. That court also refused to impute the necessary element of hypothetical possession to a trustee under § 545(2) as a hypothetical bona fide purchaser.

The court in *In re Berg,* 188 B.R. 615 (Bankr. 9th Cir.1995) adopted and elaborated on the decision in *In re Walter. Id.* at 619–620. That court held that the IRC requires a higher standard for a bona fide purchaser than does § 545. Therefore, the status of a hypothetical bona fide purchaser under the bankruptcy code is never effective to avoid IRS liens through § 6323(b), whether or not possession is an issue. § 6323(b)(1); *See also United States v. Weissing,* 1995 WL 579928 (M.D.Fla.1995), *reversing In re Southern Transfer & Storage Co.,* 157 B.R.

691 (Bankr.M.D.Fla.1993) (cited by debtors here).

These decisions are not without their critics, however. In *In re Guyana Development Corp.*, 189 B.R. 393 (Bankr.S.D.Tex.1995), the court rejected the reasoning in *Walter*. That court held that a trustee is deemed to have paid full and adequate consideration as a bona fide purchaser, thereby satisfying the definition of § 6323(h)(6). That court found no distinction between a purchaser for value and a purchaser for adequate consideration in money or money's worth.

■■■■■ This court finds the reasoning in *United States v. Weissing* persuasive. A trustee standing in the shoes of a bona fide purchaser is not the purchaser without knowledge that § 6323 is intended to protect. The specific language of § 6323 does set forth a stricter standard than § 545. And finally, with regard to motor vehicles, hypothetical possession is a legal fiction not addressed, contemplated or created by § 545. *United States v. Weissing*, 1995 WL 579928 at p. *4–5.

Additionally, avoidance of the tax lien on these grounds exceeds the scope of the standing to which this court has found a chapter 13 debtor is entitled; that is, to recover property for the benefit of the creditors. The decisions adopting *In re Walter* will be followed by this court.

■■■■■ The FIB lien: To resolve which lien has priority in the Lobo/Carr funds, the court must determine the status of the alleged FIB lien in the Lobo/Carr contract payments. A properly filed federal tax lien is valid and has priority over a prior security interest which is not protected under local law against a subsequent judgment lien creditor. 26 U.S.C. § 6323(h). The validity of a prior recorded security interest must be determined pursuant to state law. *United States v. FDIC*, 1987 WL 43096 at p. *2 (N.D.Tex.1987).

■■■■■ The security interest asserted by FIB was created by a security agreement executed May 7, 1993 and filed on May 12, 1993 in the Office of the Sheridan County Clerk. To determine the intent of the parties to an unambiguous contract, the court must give effect to the plain meaning of its language. *Kilmer v. Citicorp Mortg., Inc.*, 860 P.2d 1165, 1167 (Wyo.1993). If the contract is ambiguous, the contract is construed against the drafter. *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1111 n. 9 (10th Cir.1991). General terms, if conflicting, give way to the more specific. *Flora Const. Co. v. Bridger Valley Elec. Ass'n, Inc.*, 355 P.2d 884, 885 (Wyo. 1960).

The UCC states that a description of the collateral in the security agreement is "sufficient whether or not it is specific if it reasonably identifies what is described." Wyo.Stat. § 34.1–9–110. In this case the FIB asserts its security interest in the contract rights under the following language:

Collateral. The word "Collateral" means the following described property of Grantor:

All equipment and inventory on the attached Schedules "A", "B", "C", & "D".

In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising and wherever located: ...

(c) All accounts, contract rights, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a *sale, lease, or other disposition* of any of the property described in this Collateral section. (Emphasis provided).

■■■■■ The specific language is clear and unambiguous that the FIB did not take a security interest in any accounts or contract rights except those arising out of a sale, lease, or other disposition of the flagging equipment, mobile office and tools listed. The terms sale and lease have ordinarily understood meanings. Disposition is defined by Blacks Law Dictionary as transferring, alienating or giving up property. No sale, lease, or transfer of the flagging equipment has occurred, and no contracts or accounts related to a sale, lease, or other disposition exist.

The Lobo/Carr contract payments at issue were not created by a sale, lease, or other disposition of the equipment. The contract

payments are from services performed by Mrs. Straight as a subcontractor on a road construction project. Consequently, by its terms, the security agreement does not grant FIB a security interest in the Lobo/Carr contract payments.

 In a previous case, this court had occasion to determine the rights of the debtor in possession vis-a-vis the junior lien holder when the first priority lien was avoided. *In re Double J Cattle Co., Double J Cattle Co. v. Geis et al.,* No. 95–2012, slip opinion at 11 (Bankr.D.Wyo. Nov. 2, 1995). The status of the lien to which the trustee succeeds is not enhanced by § 551. The trustee preserves only the rights to which he has succeeded. *In re Kors, Inc.,* 819 F.2d 19, 23 (2nd Cir.1987).

 The court must turn to Wyoming law to determine the relative priority of competing liens. *In re Van De Kamp's Dutch Bakeries,* 908 F.2d 517, 519 (9th Cir.1990). Under Wyoming Statute § 34.1–9–301(a)(ii), an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. In this case, the IRS, pursuant to both the IRC and the UCC, has priority over the nonexistent lien of the FIB. The IRS lien has first priority position on the property unencumbered by the FIB lien, and is prior to any interest of the debtors or the estate.

Because the court concludes that the FIB security interest does not encumber the Lobo/Carr payments, the court does not need to determine whether the FIB filed in the proper location(s), nor whether the good faith filing provision of § 39.1–9–401(b) is applicable to the IRS. Suffice it to say that in this court's opinion, the Lobo/Carr contract payments are accounts within the meaning of the UCC. They are contract payments for services performed, falling squarely into the definition of an account, i.e., a "right to payment for ... services rendered which is not evidenced by an instrument or chattel paper ..." Wyo.Stat. § 34.1–9–106. The FIB argument that the written contract between Mrs. Straight and Lobo/Carr is an indispensable writing as described in the comments to the UCC is unconvincing. In the court's

view, an indispensable writing includes promissory notes, certificates of deposit and the like.

 A security interest in accounts must be perfected by filing a financing statement with the Secretary of State. Even if FIB had included the Lobo/Carr account in its collateral, the FIB failed to properly file the security agreement.

The court holds that the IRS tax lien has priority over the alleged security interest of the FIB in the Lobo/Carr contract.

*Preferential Transfer to FIB*

Straights seek to avoid, as a preferential transfer under § 547, the payment to FIB of $16,605.04. This payment was made on December 30, 1994, pursuant to a stipulation and court order from the District Court for the Fourth Judicial District of Sheridan County, Wyoming. The funds from which the payment was made were part of the Lobo/Carr contract payments which this court has determined were not encumbered by a FIB lien.

Under § 547, the trustee may avoid any transfer of an interest of the debtor in property to or for the benefit of a creditor; for or on account of an antecedent debt owed by the debtor before the transfer was made; made while the debtor was insolvent within 90 days before the date of the filing of the petition; and that enables the creditor to receive more than the creditor would receive if the case were a chapter 7 case.

 Section 547 provides a presumption of insolvency during the 90–day prepetition period. In this case, insolvency was not disputed and no evidence was presented to rebut that presumption or to raise a question of fact.

 A transfer is defined by § 101(54) as "every mode ... of disposing of or parting with property or with an interest in property." This broad definition encompasses the payment of money on an unsecured or undersecured debt. In this case, FIB is an unsecured creditor and was paid funds upon which it did not have a lien. FIB received more by that payment than it would have received in a chapter 7 liquidation. *In*

*re Alper–Richman Furs, Ltd.,* 147 B.R. 140 (Bankr.N.D.Ill.1992).

All elements of a preferential transfer are satisfied. But FIB defends this claim by contending that the payment was made pursuant to stipulation with the debtor and by court order.

The court cannot agree that such circumstances somehow create a defense. A judicially ordered transfer within the preference period is still a transfer. If the other elements of a preference are met, such a transfer can be avoided just as a judicially created lien is avoidable. *In re Waxman,* 128 B.R. 49 (Bankr.E.D.N.Y.1991).

The court concludes that the payment of Lobo/Carr contract funds to FIB during the 90 days prepetition was a payment on an undersecured debt which is an avoidable preferential transfer under § 547 of the code.

*Property Exempt under the IRC*

Straights also contend that some specific items of property are exempt from the attachment of the IRS lien pursuant to the provisions of 26 U.S.C. § 6334(a). Section 6334 provides a specific list of property exempt from *levy,* including the furniture, clothing and tools listed by the Straights.

 The Straights mistake the attachment of a tax lien with the process of levy, a distinction with a material difference. The federal tax lien attaches to all of a debtor's property, without exception. 26 U.S.C. § 6321. Under § 6331(b), a levy includes "the power of distraint and seizure by any means." Even if a debtor retains possession of property under § 6334, the lien continues. The debtor must still pay the amount of the secured tax claim. *In re Sills,* 82 F.3d 111, 114 (5th Cir.1996); *In re Voelker,* 42 F.3d 1050, 1053 (7th Cir.1994). If the debtor voluntarily disposes of the property subject to the lien, the property is liable for the lien even though exempt from levy while in the debtor's possession. *In re Jackson,* 80 B.R. 213, 215 (Bankr.D.Colo.1987).

 The Straights cite the case of *In re Barbier,* 84 B.R. 190 (D.Nev.1988) in support of their argument. This decision was reversed by the Ninth Circuit Court of Appeals in *United States v. Barbier,* 896 F.2d 377 (9th Cir.1990). That court held that in a "Chapter 13 plan, the IRS's tax lien may be secured by property that is exempt from levy under section 6334(a)." *Id.* at 380. Accordingly, the Straights may not exempt property from the lien by application of § 6334.

*Nonpurchase money security interest under § 522*

The one remaining legal issue is whether, through § 522(f), the debtors can avoid the FIB lien on tools which they have claimed exempt as tools of the trade. The debtors allege that the lien is a nonpossessory, nonpurchase-money security interest which impairs valid exemptions. The court is not advised as to the method or source of the values placed on the tools by the debtors. FIB responds that this claim presents genuine issues of material fact that cannot be determined on summary judgment, but did not present any opposing evidence.

As the court finds there may be a factual dispute as to the value of the tools and whether or not the lien is a nonpurchase-money lien, summary judgment on this issue is inappropriate. Regardless, a trial in this adversary proceeding is not necessary. The debtors may bring this matter before the court for resolution on motion in the underlying bankruptcy case. FIB will have ample opportunity to contest the motion and the asserted values. Fed.R.Bankr.P. 4003(d).

*Valuation*

 Finally, the debtors seek a determination of the secured claims of the FIB and the IRS under § 506(a). Valuation is not a proper summary judgment issue. Further, the debtors' own sworn pleadings create discrepancies over the value of their residence. Last but not least, until a chapter 13 plan is proposed, this issue is certainly premature. The value of the collateral securing the claims will be presented and determined in a valuation hearing held immediately prior to the confirmation hearing on any proposed chapter 13 plan.

## CONCLUSION

The court's rulings herein have resolved all of the legal issues which must be determined

 

in this adversary proceeding. The remaining disputes between the parties, valuation and the § 522(f) claim against the First Interstate Bank, will be decided in the underlying bankruptcy case. This case is fully adjudicated by the Summary Judgment which the court enters simultaneously with this Decision.

### SUMMARY JUDGMENT

THIS MATTER came before the court on the motions of the plaintiffs, Milton L. and Beverly Ann Straight, for summary judgment, and the separate motions for summary judgment of the defendants, the United States of America on behalf of its agency the Internal Revenue Service and the First Interstate Bank of Commerce, Sheridan, Wyoming. The court held a hearing on the motions on February 13, 1996, at which all parties were represented by counsel. Now the court, having considered the affidavits and other documents filed by the parties, the elements of all the claims in the complaint, the pleadings of record, the applicable law and the arguments of counsel, and in accordance with the Decision on Motions for Summary Judgment entered this day, the court finds that there are no genuine issues of material fact that must be resolved for disposition of this case. Therefore, summary judgment is proper as a matter of law on all but two matters which are more properly reserved for resolution in the underlying bankruptcy case. It is, therefore,

ORDERED that the debtors/plaintiffs, Milton and Beverly Straight, are entitled to judgment against the First Interstate Bank on Count I of the amended complaint: any alleged lien of the First Interstate Bank on the Lobo/Carr contract payments is void pursuant to 11 U.S.C. § 544; and, further

ORDERED that the plaintiffs' motion for summary judgment on the claim to avoid the transfer of $16,605.04 to First Interstate Bank as a preferential transfer pursuant to 11 U.S.C. § 547 is granted and the estate shall have judgment against the First Interstate Bank in the amount of $16,605.04, any recovery to be immediately deposited with the chapter 13 standing trustee; and, further

ORDERED that the Internal Revenue Service's motion for summary judgment is granted in all respects and the motion of the plaintiffs for summary judgment is denied on the claims against the Internal Revenue Service stated in Count III, Count IV, and Count V of the amended complaint; and, further

ORDERED that the First Interstate Bank's motion for summary judgment is denied, except as to Count IV of the amended complaint, which matter is reserved for ruling in the underlying bankruptcy case should the debtors choose to pursue it.