**In re A. David SILVER and Jerilyn H. Silver, Debtors.**

**Yvette J. Gonzales, Trustee, and The Lincoln National Life Insurance Company, individually and as Assignee of Santa Fe (Jointly Administered) Private Equity Fund II, L.P., Plaintiffs–Appellees,**

**v.**

**United States of America (Internal Revenue Service), Defendant–Appellant.**

BAP No. NM–03–042.
Bankruptcy Nos. 7–96–11879–SS, 7–96–11878–SS.
Adversary Nos. 99–1240–S.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Jan. 16, 2004.

William J. Arland (Edward Ricco with him on the brief) of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Plaintiffs–Appellees Yvette J. Gonzales, Trustee and The Lincoln National Life Insurance Company, individually and as assignee of Santa Fe Private Equity Fund, II, L.P. (Clifford C. Gramer, Jr., Albuquerque, NM, with him on the brief for Yvette J. Gonzales, Trustee).

Jon E. Fisher, Attorney (David Iglesias, United States Attorney, with him on the brief) United States Department of Justice, Dallas, TX, for Defendant–Appellant United States of America (Internal Revenue Service).

Before CLARK, MICHAEL, and BROWN, Bankruptcy Judges.

OPINION

CLARK, Bankruptcy Judge.

The United States of America (IRS) timely appeals a final Amended Judgment of the United States Bankruptcy Court for the District of New Mexico [1] in favor of the Chapter 7 trustee of the debtors' jointly administered cases (Trustee) and Lincoln National Life Insurance Company (Lincoln), an unsecured creditor of one of the debtors. The parties have not elected to have this appeal heard by the United States District Court for the District of New Mexico and, therefore, they consent to this Court's jurisdiction.[2] For the reasons stated below, we RETAIN JURISDICTION over a limited portion of the Amended Judgment pending receipt of a Supplemental Appendix as more fully set forth below, REVERSE the Amended Judgment in part, and AFFIRM it in part.

## I. *Background*

David Silver, one of the Chapter 7 debtors (David), is a self-described venture capitalist who lived in Santa Fe, New Mexico with co-debtor, Jerilyn Silver (Jerilyn) (collectively, the "Debtors"). David and Jerilyn were married during most of the periods relevant to this case, but they divorced in 1995. Although no longer married, the Debtors each filed Chapter 7 petitions in New Mexico on May 2, 1996, and their cases are being jointly administered. The Trustee is the Chapter 7 trustee of the jointly administered cases. Lincoln holds a nondischargeable judgment against David exceeding $24 million, and it is the assignee of a limited partnership interest formerly held by David. The Trustee and Lincoln (collectively, the "Plaintiffs") are parties to a court-approved Joint Prosecution Agreement under which Lincoln funds litigation related to the Debtors' assets.

The Plaintiffs commenced an adversary proceeding against the IRS in the Debtors' jointly administered cases (IRS Proceeding), seeking a determination as to the extent of the IRS's tax liens against property owned by the Debtors. After a trial, the bankruptcy court entered a Judgment and Amended Judgment in favor of the Plaintiffs, and it is the Amended Judgment that the IRS appeals.

Our review of the Amended Judgment is based on the following record: (1) the Plaintiff's Complaint against the IRS initiating the IRS Proceeding, attached to which as an exhibit is a portion of a default judgment in an adversary proceeding captioned as *Gonzales v. Silver (In re A. David Silver)*, Ad. No. 98–1092 (Bankr. D.N.M.) (the "Fraudulent Transfer Ac-

---

**1.** 28 U.S.C. § 158(a)(1); Fed. R. Bankr.P. 8002.

**2.** 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e).

tion"); [3] (2) the IRS's Answer to the Complaint,[4] attached to which as an exhibit is an "Order Granting Intervenor Los Alamos National Bank's Motion for Interpleader" (Intervenor Order) filed in a proceeding captioned as: *ADS Financial Services, Inc. v. United States*, Civ. No. 95–1469 LH/RLP (D.N.M.) (the "Intervenor Action"); [5] (3) a pretrial scheduling order entered in the IRS Proceeding; [6] (4) a trial transcript of the IRS Proceeding; [7] (5) exhibits offered by the IRS and entered into evidence in the IRS Proceeding; [8] (6) the bankruptcy court's Judgment and Memorandum in Support of Judgment; [9] (7) the bankruptcy court's Amended Judgment; [10] (8) the docket sheet for the IRS Proceeding; [11] (9) the IRS's post-trial brief filed in the IRS Proceeding; [12] (10) a "Time Line" that was referred to by the bankruptcy court and the parties during the IRS Proceeding; [13] and (11) docket sheets in the Debtors' cases.[14]

■ The IRS has also submitted as part of the appellate record a paper titled: "Intervenor Los Alamos National Bank's Motion for Interpleader," [15] which was filed in the Intervenor Action. We will not consider this paper as part of the record on

review, however, because the IRS admits that it was not before the bankruptcy court below.[16]

Omitted from our appellate record are the Plaintiffs' ten exhibits (Plaintiffs' Exhibits). The Plaintiffs' Exhibits were admitted into evidence by the bankruptcy court pursuant to a stipulation of the parties.[17] The bankruptcy court relied on the Plaintiffs' Exhibits in entering its Amended Judgment.[18] From the record, however, we cannot identify the Plaintiffs Exhibits, and know only that some of Plaintiffs' Exhibits overlap the IRS's exhibits.[19]

Based on this record, we set forth the following background.

### 1. The IRS's Prepetition Tax Liens

Prior to filing their Chapter 7 petitions, the Debtors failed to pay certain income tax debts to the IRS. As a result, federal tax liens were created pursuant to 26 U.S.C. § 6321, and the IRS filed numerous notices of tax liens against the Debtors' real and personal property. Specifically, between 1987 and March 1996, the IRS filed several notices of tax liens against real and personal property owned by David and/or Jerilyn located in New Mexi-

3. Appellant's Appendix at 178.

4. *Id.* at 190.

5. *Id.* at 197.

6. *Id.* at 203.

7. *Id.* at 207.

8. *Id.* at 1–177.

9. *Id.* at 244.

10. *Id.* at 241.

11. *Id.* at 268.

12. Appellee's Appendix at 1.

13. *Id.* at 8.

14. Appellant's Appendix at 276.

15. IRS's Appendix in Support of Reply Brief at 303.

16. *See, e.g., Aero–Med., Inc. v. United States*, 23 F.3d 328, 329 n. 2 (10th Cir.1994); *Boone v. Carlsbad Bancorp., Inc.*, 972 F.2d 1545, 1549 n. 1 (10th Cir.1992).

17. Transcript at 3–5, *in* Appellant's Appendix at 207–208.

18. Memorandum Opinion in Support of Judgment at 2, *in* Appellant's Appendix at 248.

19. Transcript at 5, *in* Appellant's Appendix at 208.

co. In March 1994, the IRS filed a notice of tax lien against real and personal property owned by David and/or Jerilyn located in New York (collectively, the "Prepetition Tax Liens"). It is undisputed that at some point the Prepetition Tax Liens encumbered the Debtors' personal property, including property that is generally referred to as the "Art" and the "Stock."

### 2. The LANB Foreclosure and the Intervenor Action

Los Alamos National Bank (LANB) had a lien interest in the Debtors' property. Although we have absolutely no record regarding the extent and nature of the interests held by LANB in the Debtors' property, the following information is undisputed by the parties. LANB's lien interest extended to the Debtors' real property located in New Mexico and New York. In 1995, the exact date not being known from the record but after the IRS filed its Prepetition Tax Liens, LANB obtained foreclosure judgments against some of the Debtors' property (LANB Foreclosure). As a result of the LANB Foreclosure, LANB came into possession of the Art—the basis for its possession, however, is unknown.

Also in 1995, ADS Financial Services, Inc. (ADS), an entity that was formed by and possibly controlled by David, commenced what is defined above as the "Interpleader Action" against the IRS in the District of New Mexico. The relief sought by ADS in the Interpleader Action is wholly unknown from the record, but the Intervenor Order, the only paper of record existing from that Action, makes clear that it involved a dispute related to ownership of the Art. ADS's purported interest in the Art cannot be discerned from the record, except that the Time Line that was relied on by the bankruptcy court (but which does not appear to have been admitted into evidence and was not subject to stipulation by the parties) states that in August 1995, ADS paid LANB $190,000 to settle a lawsuit, and it purchased the Art from LANB.[20]

In September 1996, after the Debtors' Chapter 7 petitions had been filed, the district court entered an Order in the Intervenor Action granting LANB "leave to intervene and file an interpleader action under Rule 22 [of the Federal Rules of Civil Procedure.]"[21] LANB promptly filed such a motion, described above as the "Intervenor Motion," seeking in relevant part, to interplead "artwork" located in New Mexico and New York.[22] No one disputes that this "artwork" is the Art in question in this appeal.

In November 1996, the district court granted LANB's Intervenor Motion finding that "the factual and legal standards for interpleading the . . . artwork into the custody of the Court or the Court's designated custodian have been met[.]"[23] It further stated that it was required to "appoint a custodian for the [Art] until the merits of the action of this case can be determined and the ownership of the [Art] can be determined . . . ."[24] Based on these findings, the district court ordered that the IRS "immediately take custody and control of the [Art], and maintain custody and

---

20. Time Line at 3, *in* Appellee's Supplemental Appendix at 10. From the record we have there is no foundation to support this entry in the Time Line, but we can discern from it that ADS claimed an ownership interest in the Art.

21. Intervenor Order at 2, *in* Appellant's Appendix at 198.

22. *Id.*

23. *Id.*

24. *Id.* at 3, *in* Appellant's Appendix at 199.

control until further order of the Court[.]"[25] Pursuant to this Order, the IRS took custody and control of the Art.

In 1997, the Intervenor Action was dismissed on procedural grounds.[26] Specifically, the district court dismissed the Action because ADS, a corporation, was required to be represented by an attorney, and it failed to retain an attorney.[27] As a result, no ruling was ever made as to ADS's purported ownership interest in the Art.

Subsequently, between March and June 1998, the IRS served and published notices of public auction, indicating its intent to sell the Art in New York. The IRS cancelled the auction when the Trustee informed it that the Debtors' estates had a potential interest in the Art (the nature of this interest being unknown from the record, other than that the "Fraudulent Transfer Action" was commenced against ADS and other insiders of the Debtors during this time).[28] As a result of this potential interest, the IRS, no longer required to serve as custodian of the Art in the Intervenor Action, turned it over to the Trustee. The Art has been sold by the Trustee, and the sale proceeds are being held pending the outcome of this appeal.

### 3. The Fraudulent Transfer Action

At some point prior to filing their Chapter 7 petitions, David allegedly transferred property to Jerilyn and/or other insider persons or entities, including ADS. In May 1998, when the IRS was preparing to auction the Art, the Plaintiffs commenced in David's Chapter 7 case what is defined above as the "Fraudulent Transfer Action"

against the purported transferees of David's alleged prepetition transfers (Fraudulent Transfer Defendants). The causes of action asserted in the Fraudulent Transfer Action are unknown from our record, but it is undisputed that the Plaintiffs asserted claims against the Fraudulent Transfer Defendants pursuant to 11 U.S.C. §§ 544(b) and 548 and state fraudulent transfer law, and also claimed that certain of such Defendants were alter egos of the Debtors.

In September 1998, the bankruptcy court entered a Default Judgment in the Fraudulent Transfer Action in favor of the Plaintiffs. As a result, the prepetition transfers subject to the Fraudulent Transfer Action were avoided, and certain of the Fraudulent Transfer Defendants were determined to be alter egos of the Debtors. The details related to the Fraudulent Transfer Action, such as the property recovered pursuant to the Default Judgment, are unknown because the only papers provided to this Court from that Action are two pages of the Default Judgment. But, it is undisputed that as a result of the Default Judgment, the estate recovered an interest in the Art, to the extent ADS held an interest therein.

### 4. The IRS's Proofs of Claim

The IRS filed proofs of claim against the Debtors, asserting secured, priority and unsecured claims. The total amount of the claims against David are approximately $1.5 million, and the claims against Jerilyn total approximately $1 million. Of those amounts, the IRS relies on its Prepetition Tax Liens to assert a secured claim of approximately $14,000 against David, and

---

**25.** Id.

**26.** See Time Line at 6, in Appellee's Supplemental Appendix at 13 (showing that the Intervenor Action was dismissed by order entered April 17, 1997).

**27.** Transcript at 63, in Appellant's Appendix at 222.

**28.** See discussion infra.

a secured claim of approximately $16,000 against Jerilyn. The IRS claims that the Art and Stock collateralize its Prepetition Tax Liens.

### 5. *The Postpetition Tax Liens*

Between January 1998 and June 1999, after the Debtors' Chapter 7 cases had been commenced, the IRS filed several Notices of Tax Liens in New Mexico against certain insiders (Nondebtor Insiders) of the Debtors pursuant to 26 U.S.C. § 6901, which created tax liens pursuant to 26 U.S.C. § 6321 (Postpetition Tax Liens).[29] The Postpetition Tax Liens expressly state that they are against the Nondebtor Insiders as "TRANSFER-EE[S], ALTER–EGO[S] AND/OR NOMI-NEE[S] OF" the Debtors.[30] It is uncontested that the Nondebtor Insiders, who were also Fraudulent Transfer Defendants, were ultimately determined to be the Debtors' alter egos.[31]

### 6. *The IRS Proceeding*

In December 1999, the Plaintiffs commenced the IRS Proceeding against the IRS, seeking a determination that the IRS's Prepetition Tax Liens were invalid as against the Art and Stock. They also sought a determination that the Postpetition Tax Liens were void as having been filed in violation of the automatic stay.

After a trial, the bankruptcy court entered its Amended Judgment in favor of the Plaintiffs. This Amended Judgment is supported by a Memorandum Opinion. As a result of the Amended Judgment, the IRS has no interest in the Art or the Stock, and its Postpetition Tax Liens are void.

The IRS timely appealed the final Amended Judgment.

## II. *Discussion*

The Amended Judgment vitiates the IRS's lien interest in the Art and the Stock, and voids the IRS's Postpetition Tax Liens against property held by the Nondebtor Insiders. The IRS asserts that the bankruptcy court erred in entering the Amended Judgment. The IRS's points of error related to its claimed interest in the Art are discussed below in section 1, its contentions related to the Stock are dealt with in section 2 *infra,* and its arguments related to the Postpetition Tax Liens are discussed in section 3 below.

1. *The appellate record is insufficient to adequately review the portion of the Amended Judgment related to the IRS's interest in the Art and, therefore, the Court will retain jurisdiction over this portion of the Amended Judgment pending receipt of a Supplemental Appendix.*

■ The bankruptcy court held that the IRS's claim against the Debtors is not secured by the Art and, therefore, it can-

---

**29.** In May 1997, the IRS recorded two tax liens against David and/or Jerilyn in New York. Appellant's Appendix at 33–34. We do not consider these liens because the parties have not discussed them in this appeal.

**30.** Postpetition Tax Liens, *in* Appellant's Appendix at 36–42. The Postpetition Tax Lien against Santa Fe Capital Group, Inc. (Santa Fe) does not state that it is filed against Santa Fe as the Debtors' transferee, alter-ego and/or nominee. Appellant's Appendix at 43. But, Santa Fe was a Fraudulent Transfer Defen-

dant, and it is undisputed that it was determined to be David's alter ego by the Fraudulent Transfer Judgment. Furthermore, no party has made any distinction between this Postpetition Tax Lien or any of the others and, therefore, we can assume that it was filed against Santa Fe pursuant to 26 U.S.C. § 6901 as a transferee of the Debtor-taxpayers' property. *See* discussion *supra.*

**31.** *See* Appellant's Brief at 7, ¶ 16.

not be paid from the proceeds that resulted from the Trustee's sale of the Art. In so doing, it found that the IRS's Prepetition Tax Liens were junior to the liens of LANB, and LANB foreclosed on the Art in a state court action in which the IRS was a party. Thus, according to the bankruptcy court, the LANB Foreclosure cut off the IRS's junior lien in the Art, and when the Trustee retained possession of the Art, the IRS's Prepetition Tax Liens were no longer secured by the Art.

The IRS contests this conclusion stating that the bankruptcy court's factual conclusions are clearly erroneous because they are not supported by the record. It claims that the LANB Foreclosure related only to real, not personal property, and that LANB never had an interest in the Art. Thus, the LANB's Foreclosure did not affect the IRS's Prepetition Tax Liens in the Art.

■ "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court *on the entire evidence* is left with the definite and firm conviction that a mistake has been committed." [32] Here, the record supplied to us on appeal supports the IRS's argument that the bankruptcy court erred in determining that LANB held an interest in the Art at the time of the LANB Foreclosure. It contains nothing indicating the extent of LANB's interest in the Debtors' property or about the LANB Foreclosure that would support the bankruptcy court's factual findings. In addition, inferences can

be drawn from the Intervenor Action that because LANB was allowed to interplead the Art after the LANB Foreclosure pursuant to Federal Rule of Civil Procedure 22, LANB had no interest in the Art.

Although the bankruptcy court's factual findings related to the Art appear to be clearly erroneous, we cannot so hold based on the record supplied to us. As discussed, an appellant court's conclusion that a trial court's factual findings are clearly erroneous must be based on a review of the "entire record." Here, we have not been supplied with the entire trial court record. In particular, the Plaintiffs' Exhibits, to the extent that they do not overlap the IRS's exhibits, are not included in the appellate record. There is no information in the record identifying the Plaintiffs' Exhibits, and we cannot speculate as to their nature. Furthermore, we only have two pages of the Default Judgment in the Fraudulent Transfer Action. Without this information we will not determine that the bankruptcy court's factual findings are clearly erroneous, and typically, we would be compelled to summarily affirm the bankruptcy court.[33]

However, we are hesitant to summarily affirm the bankruptcy court in this case because (1) all parties agree that but for LANB's purported interest in the Art, the IRS's Prepetition Tax Liens were secured by the Art, (2) the IRS appears to have properly refuted that LANB's purported interest in the Art below,[34] (3) the Plain-

---

**32.** *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (emphasis added), *quoted in Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**33.** *See, e.g., Scott v. Hern,* 216 F.3d 897, 912 (10th Cir.2000); *McEwen v. City of Norman,* 926 F.2d 1539, 1550 (10th Cir.1991) (appellant has duty to supply adequate record for review, and failure to do so will result in the

bankruptcy court being affirmed); *see also* Fed. R. Bankr.P. 8009(b); 10th Cir. BAP L.R. 8009–1(b).

**34.** *See* Complaint ¶ 23, *in* Appellant's Appendix at 184 (averring that LANB foreclosed on the Art thus cutting off the IRS's lien); Answer ¶ 24, *in* Appellant's Appendix at 195 (denying this point).

tiffs' Exhibits may be relevant to our review in light of the fact that the Plaintiffs had the burden to show LANB's interest in the Art and that the LANB Foreclosure cut off the IRS's interest in the Art, (4) the Intervenor Order creates a strong inference that LANB did not have an interest in the Art, and (5) the bankruptcy court's findings of fact do not reference the record on which they are based. Under these circumstances, we will retain jurisdiction over this appeal and order that the IRS supplement the record to include (1) the Plaintiffs' Exhibits that were admitted into evidence, and (2) a complete copy of the Default Judgment in the Fraudulent Transfer Action.[35] The supplemental record should contain no additional argument, but rather be submitted in the form of a Supplemental Appendix within fifteen days from the date of this Opinion. We will retain jurisdiction over this portion of the Amended Judgment, and file a Supplemental Order and Judgment after we have had an opportunity to review the contents of the IRS's Supplemental Appendix.

■ The IRS also claims that the bankruptcy court incorrectly held that it could not assert its Prepetition Tax Liens against the Art because it was brought back into the estate by the Default Judgment in the Fraudulent Transfer Action. If this was held by the bankruptcy court, it was wrong. Section 551 of the Bankruptcy Code states that avoided transfers are "preserved for the benefit of the estate . . . ."[36] Recovery of property fraudulently transferred does not serve to void liens on the property or make the liens voidable.

But, we do not read the Memorandum Opinion to so hold. Rather, the bankruptcy court starts with the premise that the LANB Foreclosure voided the IRS's Pre-petition Tax Liens against the Art. From this premise, it concludes that after the LANB Foreclosure, the IRS's interest in the Art was extinguished. Thus, according to the bankruptcy court, when the Default Judgment in the Fraudulent Transfer Action was entered, the IRS's Prepetition Tax Liens were no longer secured by the Art.

For the reasons stated above, we cannot determine from the appellate record whether the bankruptcy court erred in making this conclusion. We will reserve ruling on this portion of the Amended Judgment pending our receipt of the IRS's Supplemental Appendix.

2. *The bankruptcy court erred in invalidating the IRS's Prepetition Tax Liens in the Stock.*

The bankruptcy court held that the IRS's Prepetition Tax Liens are not secured by the Stock because the Liens are not valid as to that Stock under 26 U.S.C. § 6323(b)(1). The IRS claims that the bankruptcy court erred in invalidating its Prepetition Tax Liens against the Stock. We agree with the IRS, but for different reasons. In reversing the portion of the Amended Judgment related to the Stock, we first discuss why the IRS's Prepetition Tax Liens were valid and perfected on the Debtors' petition date as against the Stock. Next, we set forth how the IRS's valid, perfected interest in the Stock could be invalidated under the law, and define the nature of the Plaintiffs' IRS Proceeding. With that background, we conclude that the bankruptcy court erred as a matter of law in invalidating the IRS's Prepetition Tax Liens in the Stock pursuant to § 6323(b)(1).

---

**35.** *See* Fed. R.App. P. 10(e)(2); 10th Cir. BAP L.R. 8018–11(b).

**36.** 11 U.S.C. § 551.

■ It is undisputed that the IRS's Prepetition Tax Liens were properly imposed against the Debtors under 26 U.S.C. § 6321. Pursuant to § 6321, the IRS held an interest in all of the Debtors' personal property, including the Stock. There is no dispute that the IRS properly filed notices of its Prepetition Tax Liens in accordance with 26 U.S.C. § 6323(a) and (f) and, therefore, the IRS's valid lien interest in the Stock was perfected as of the Debtors' petition date.[37] The IRS's secured claims, as asserted in its proofs of claim filed in the Debtors' cases, are partially based on this valid, perfected lien interest in the Stock. Thus, unless the IRS's Prepetition Tax Liens in the Stock were avoided for the benefit of the estate, or its secured claims were properly disallowed, the IRS has a property interest in the Stock that must be recognized.

The IRS's Prepetition Tax Liens in the Stock have not been avoided by the Trustee. We have no record that the Trustee has commenced an avoidance action pursuant to 11 U.S.C. §§ 544, 545, 547–549, or 550 against the IRS related to the Prepetition Tax Liens in the Stock, much less obtained a judgment in such an action. Furthermore, the IRS Proceeding is not such an action. The Plaintiffs in no way raised any causes of action seeking to avoid the IRS's Prepetition Tax Liens as against the Stock. Nowhere in their Complaint are any avoidance provisions asserted, and the Complaint does not use the words "avoidance" or "avoid" in connection with the IRS's interest in the Stock.[38]

■ Rather, the IRS Proceeding was the Plaintiffs' objection to the IRS's secured claim pursuant to 11 U.S.C. § 502(b) and Federal Rule of Bankruptcy Procedure 7001(2)—the Plaintiffs were seeking a determination as to the validity and extent of the IRS's Prepetition Tax Lien against the Stock as asserted in the IRS's proofs of claim. In particular, the Plaintiffs attacked the IRS's valid, perfected Prepetition Tax Liens in the Stock, seeking a "declaratory judgment that any IRS liens against stock belonging to the Chapter 7 estates are invalid[,]"[39] presumably under § 502(b), which governs the allowance and disallowance of claims.

■ Although the subsection of § 502(b) relied on by the Plaintiffs is not stated in their Complaint, the only provision that could apply to the IRS Proceeding is

---

**37.** *See generally In re LMS Holding Co.,* 50 F.3d 1526, 1528 (10th Cir.1995) (priority of federal tax lien is matter of federal law).

**38.** When the Plaintiffs' Complaint was filed in 1999, more than three years after the Debtors' Chapter 7 petitions were filed, such avoidance actions would have been time-barred under 11 U.S.C. § 546(a). The effect of the two-year period stated in 11 U.S.C. § 546(a) is uncertain. *See In re M & L Bus. Mach. Co.,* 75 F.3d 586, 591 (10th Cir.1996) (by holding that the equitable tolling doctrine applies to § 546(a), suggested that § 546(a) is a statute of limitations that may be waived); *Starzynski v. Sequoia Forest Indus.,* 72 F.3d 816, 822 (10th Cir.1995) (suggesting that § 546(a) may be jurisdictional in nature, but refusing to address the issue); *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005 (10th Cir. BAP 1998) (considering § 546(a) because jurisdictional effect of § 546(a) was unclear), *aff'd,* 195 F.3d 568 (10th Cir.1999); *see also Commercial Fin. Servs., Inc. v. Temple (In re Commercial Fin. Servs., Inc.),* 294 B.R. 164 (Bankr.N.D.Okla. 2003) (examining this issue). We need not address this issue in this case. We merely mention § 546(a) because the Plaintiffs' failure to formally plead an avoidance cause of action precluded the IRS from raising § 546(a) as an affirmative defense or otherwise. The IRS did raise laches as an affirmative defense to the Plaintiffs' claim that its secured claims should be disallowed. This defense is not an issue in this appeal.

**39.** Complaint at 9, *in* Appellant's Appendix at 186.

§ 502(b)(2). That section states that a claim will be allowed, except to the extent that it "is unenforceable against the debtor and property of the debtor, under ... applicable law ...."[40] Here, the applicable law is 26 U.S.C. § 6323(b)(1), which states:

(b) **Protection for certain interests even though notice filed.** Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

(1) **Securities.** With respect to a security (as defined in subsection (h)(4))—

(A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien; and

(B) as against a holder of a security interest in such security who, at the time such interest came into existence, did not have actual notice or knowledge of the existence of such lien.[41]

Under this section, therefore, a valid, perfected tax lien in securities, such as the Prepetition Tax Liens,[42] may be invalidated as against a "purchaser" of the securities or "a holder of a security interest" in the securities. It is important to understand that "invalidation" of a tax lien in securities under § 6323(b)(1) is not the equivalent of "avoidance" of a tax lien under 11 U.S.C. § 544, or the avoidance of "the fixing of a statutory lien" under 11 U.S.C. § 545(2). Section 6323(b)(1) provides "purchasers" of and "holders of security interests" in securities against which a tax lien has been filed a separate right to invalidate an otherwise valid and perfected tax lien, independent of any avoidance remedies afforded to a trustee in bankruptcy. A tax lien against a debtor's securities invalidated under § 6323(b)(1) is unenforceable and thus, any secured claim based on that lien must be disallowed pursuant to § 502(b)(2).[43]

The bankruptcy court concluded that § 6323(b)(1) invalidated the IRS's Prepetition Tax Liens against the Stock. Although not clearly articulated in its Memorandum Opinion, the bankruptcy court must have concluded that (1) the Trustee[44] was a "purchaser" of the Stock or a "holder of a security interest" in the Stock, and (2) the Trustee took the Stock without actual notice or knowledge of the existence of the IRS's Prepetition Tax Lien.[45] Accordingly, we must determine whether the Trustee is as a "purchaser" of or a "holder of a security interest" in the Stock. For the reasons stated below, we conclude that she is not as a matter of law and, therefore, the bankruptcy court erred in applying § 6323(b)(1) to invalidate the IRS's Prepetition Tax Liens in the Stock.

The phrases "purchaser" and "security interest" are defined in 26 U.S.C. § 6323(h). Section 6323(h)(6) states that a " 'purchaser' means a person who, for ade-

---

**40.** 11 U.S.C. § 502(b)(2).

**41.** 26 U.S.C. § 6323(b)(1).

**42.** No one contests that the Stock is a "security" under 26 U.S.C. § 6323(h)(4).

**43.** Invalidation of a tax lien under § 6323(b)(1) may also be grounds for avoiding the statutory lien under 11 U.S.C. § 545(2), inasmuch as that section provides that the fixing of a statutory lien may be avoided to the extent that it is not "enforce-

able" on a debtor's petition date as against a hypothetical bona fide purchaser. Avoidance, however, is separate from invalidation of a tax lien.

**44.** Although the IRS Proceeding was brought by the Trustee and Lincoln, we will limit our discussion to the Trustee. No one has asserted that Lincoln could have any rights under § 6323(b)(1), and we cannot conceive of any such rights.

**45.** 26 U.S.C. § 6323(b)(1)(A) & (B).

quate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." [46] Section 6323(h)(1) states that the term " 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." [47]

▮▮▮▮ Trustees, viewed purely as estate representatives, are not "purchasers" of or holders of a "security interest" in a debtor's securities as those phrases are defined in § 6323(h). But, on the petition date, 11 U.S.C. § 544(a) "permits the trustee . . . to assume the guise of a creditor with a judgment against the debtor." [48] It states, in relevant part, that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of . . .
>
>> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.] [49]

The question is whether the Trustee's status as a hypothetical judicial lien creditor pursuant to § 544(a)(1) makes her a "purchaser" of or a "holder of a security interest" in the Stock within the meaning of § 6323(b)(1). We hold that it does not.

As a hypothetical judicial lien creditor under § 544(a)(1), the Trustee is a creditor holding a "judicial lien." A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding[.]" [50] As the hypothetical holder of a judicial lien under § 544(a)(1), the Trustee is not a "purchaser" within the meaning of § 6323(b)(1)(A) because § 6323(h)(6) expressly states that a "purchaser" is not a lien holder. Furthermore, § 6323(b)(1)(B) does not apply to the Trustee because as the hypothetical holder of a judicial lien under § 544(a)(1), the Trustee is not "a holder of a security interest." Section 6323(b)(1) limits the definition of the phrase "security interest" to interest attained by "contract." [51] A "judicial lien" is not a lien that is created by contract. Because § 6323(b)(1) does not apply to the Trustee, the bankruptcy court erred in invalidating the IRS's Prepetition Tax Liens against the Stock thereunder.

▮▮▮▮ In so holding, we must address two issues. First, we are compelled to reach this issue because, contrary to the IRS's arguments, invalidation of the Prepetition Tax Liens in the Stock under § 6323(b)(1) cannot be resolved based on the Trustee's actual notice or knowledge of the IRS's Prepetition Tax Liens. As stated by the IRS, the evidence shows that the

---

46. *Id.* § 6323(h)(6).

47. *Id.* § 6323(h)(1).

48. *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir.1990).

49. 11 U.S.C. § 544(a)(1). Section 544(a) also gives the Trustee the rights and powers of a creditor who obtains an execution against the

debtor that is returned unsatisfied, and a bona fide purchaser of real property. *Id.* § 544(a)(2)–(3). Neither of these subsections has any application to this case.

50. *Id.* § 101(36).

51. 26 U.S.C. § 6323(h)(1); *see* 11 U.S.C. § 101(51) (" 'security interest' means lien created by an agreement[.]").

Trustee obtained the Stock certificates postpetition—in October 1999, at a time when she had knowledge of the Prepetition Tax Liens against the Stock. Because the Trustee had actual knowledge of the Prepetition Tax Liens when she obtained the Stock, the IRS contends that § 6323(b)(1) does not apply and there is no need to address the Trustee's status as a purchaser of or a holder of a security interest in the Stock. But, we conclude that the date that the Trustee obtained the Stock is irrelevant under § 6323(b)(1). If the Trustee was a "purchaser" or a "holder of a security interest" under § 6323(b)(1), which we expressly hold that she is not, she would have become one on the petition date by virtue of § 544(a)(1). Accordingly, the only relevant date under § 6323(b)(1) is the Debtors' petition date. There was no evidence as to the Trustee's actual notice or knowledge of the Prepetition Tax Liens on the Debtors' petition date and, therefore, we are compelled to determine this case based on the legal analysis above.

■ Second, contrary to the references made in the bankruptcy court's Memorandum Opinion, 11 U.S.C. § 545(2) has no application to this case. That section makes the Trustee a hypothetical "bona fide purchaser" for purposes of avoiding statutory liens. It states:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

. . . .

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists[.] [52]

Courts outside the Tenth Circuit are divided as to whether the hypothetical bona fide purchaser status under § 545(2) creates a "purchaser" or a "holder of a security interest" under § 6323(b).[53] Neither the Court of Appeals for the Tenth Circuit nor this Court has addressed this issue,[54] and we need not do so in this case because the IRS Proceeding does not seek to avoid the Prepetition Tax Liens in the Stock pursuant to § 545(2).[55] Not having brought an avoidance proceeding under § 545(2), the Trustee cannot claim to be a hypothetical bona fide purchaser thereunder.

■ In refusing to address the Trustee's status under § 545(2), we acknowledge that the IRS Proceeding also does not assert causes of action under § 544(a)(1). We have used that section to

**52.** *Id.* § 545(2).

**53.** *Compare, e.g., Battley v. United States (In re Berg),* 121 F.3d 535 (9th Cir.1997) (a trustee as a hypothetical bona fide purchaser under § 545(2) is not a "purchaser" or a "holder of a security interest" for purposes of § 6323(b)); *United States v. Hunter (In re Walter),* 45 F.3d 1023 (6th Cir.1995) (same); *Janssen v. United States (In re Janssen),* 213 B.R. 558 (8th Cir. BAP 1997) (same); *Stangel v. United States (In re Stangel),* 222 B.R. 289 (Bankr.N.D.Tex.1998) (same, and collecting cases), *with Askanase v. United States (In re Guyana Dev. Corp.),* 189 B.R. 393 (Bankr. S.D.Tex.1995) (rejecting *Walter*).

**54.** In *Straight v. First Interstate Bank of Commerce (In re Straight),* 207 B.R. 217, 228 (10th Cir. BAP 1997), we expressly declined to address the issue.

**55.** *Compare Berg,* 121 F.3d at 536 (appeal involved judgment in an adversary proceeding asserting a cause of action under § 545(2)); *Stangel,* 222 B.R. at 294–95 (same); *Straight,* 207 B.R. at 228 (Court refused to address issue of whether a trustee, as hypothetical bona fide purchaser under § 545(2), was a "purchaser" of the securities "or a holder of a security interest" within the meaning of § 6323(b) in an appeal involving an adversary proceeding asserting causes of action under, *inter alia,* § 545(2)).

determine the application of § 6323(b)(1) in this claim objection matter, however, because its scope is broader than § 545(2). In particular, § 544(a) states that "[t]he trustee shall have ... the rights and powers of, *or* may avoid any transfer ... that is voidable by" a judicial lien creditor.[56] Thus, under § 544(a), a trustee has the rights and powers of a judicial lien creditor, *and* the trustee may avoid any transfer that is voidable by a judicial lien creditor. This point has been recognized by the Tenth Circuit, as it has stated:

> Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction [of a hypothetical lien creditor under § 544(a)] permits the trustee to also assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke whatever remedies provided by [applicable] law to judgment lien creditors to satisfy judgments against the debtor.[57]

In contrast, § 545(2) does not confer any similar rights and powers on a trustee, it being expressly limited to avoidance powers. Since the Plaintiffs did not seek to avoid the IRS's Prepetition Tax Liens against the Stock under § 545(2), the hypothetical bona fide purchaser status afforded in that section has no application in this case. Therefore, we expressly decline to address the issue of whether a trustee's standing as a hypothetical bona fide purchaser pursuant to § 545(2) makes the trustee a "purchaser" of or a "holder of a security interest" in securities for pur-

poses of invalidating a tax lien under § 6323(b).

Even if § 544(a)(1), like § 545(2), has no application in this case because the Plaintiffs failed to assert it in the IRS Proceeding or because any reliance on it would be barred under 11 U.S.C. § 546(a),[58] our conclusion that the bankruptcy court erred in invalidating the IRS's Prepetition Tax Liens against the Stock is not altered. Absent reliance on § 544(a)(1), the Trustee has absolutely no basis on which to base her status as a "purchaser" of or a "holder of a security interest" in the Stock and, therefore, § 6323(b)(1) does not apply.

Accordingly, the bankruptcy court erred in disallowing the IRS's secured claims as they relate to the Stock. The IRS holds valid perfected Prepetition Tax Liens in the Stock. Such Liens must be recognized because they have not been avoided, and they cannot be invalidated under § 6323(b)(1) as a matter of law. The portion of the Amended Judgment invalidating the IRS's Prepetition Tax Liens in the Stock is, therefore, reversed.

3. *The bankruptcy court did not err in determining that the IRS's Postpetition Tax Liens are void.*

 The bankruptcy court held that the IRS's Postpetition Tax Liens are void because they were made in violation of the automatic stay set forth in 11 U.S.C. § 362(a).[59] The IRS argues that this conclusion is incorrect because the Postpetition Tax Liens are against the Nondebtor Insiders to whom the automatic stay does

---

**56.** 11 U.S.C. § 544(a) (emphasis added).

**57.** *Zilkha*, 920 F.2d at 1523.

**58.** *See supra* n. 38.

**59.** *See, e.g., Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir.1994) (actions in violation of the automat-

ic stay are void) (citing *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372–73 (10th Cir.1990)); *see also Goldston v. United States (In re Goldston)*, 104 F.3d 1198 (10th Cir. 1997) (IRS denied secured status as a result of assessment conducted in violation of the automatic stay).

not apply. Certainly, nondebtors and their property are not protected by the § 362(a) stay.[60] We conclude, however, that the bankruptcy court did not err in voiding the Postpetition Tax Liens because they were filed in violation of § 362(a)(6).

Section 362(a)(6) operates to stay "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"[61] Here, it is undisputed that the IRS held a prepetition claim against the Debtors for unpaid income taxes, and the IRS admits that the Postpetition Tax Liens were filed against property held by the Nondebtor Insiders to collect that prepetition debt. Accordingly, the IRS's filing of Postpetition Tax Liens was an act to collect a prepetition claim against the Debtors in violation of the stay imposed under § 362(a)(6). The bankruptcy court, therefore, did not err in voiding the Postpetition Tax Liens.

■ Our analysis under § 362(a)(6) is not changed by the fact that the IRS filed the Postpetition Tax Liens against the Nondebtor Insiders as transferees of the Debtors property, and prior to the Trustee's recovery of that property for the benefit of the estate pursuant to the Fraudulent Transfer Judgment. Although such property may not have been property of the estate when the Postpetition Tax Liens were filed,[62] § 362(a) is not limited to staying acts against property of the estate.[63] Section 362(a)(6) stays any act to collect or recover a prepetition claim, including acts "to collect a prepetition claim out of property that was fraudulently transferred by [a] debtor prior to the commencement of the case."[64] This rule exists because a single creditor's act to collect transferred property "prejudice[s] the Trustee's ability to litigate a competing avoidance claim on behalf of all creditors and [is] therefore inconsistent with the basic purpose of the automatic stay, 'to prevent creditors from stealing a march on each other.'"[65]

By filing the Postpetition Tax Liens against the Nondebtor Insiders as transferees of the Debtors' property, the IRS

**60.** 11 U.S.C. § 362(a); *see, e.g., Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 141 (10th Cir.1994); *Otoe County Nat'l Bank v. W & P Trucking, Inc.,* 754 F.2d 881, 883 (10th Cir.1985); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1329–30 (10th Cir.1984).

**61.** 11 U.S.C. § 362(a)(6).

**62.** *See FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125, 133 (2nd Cir.1992) (property transferred prepetition and subject to an avoidance action is not property of the estate); *but see American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266 (5th Cir.1983) (transferred property is property of the estate because the debtor retains an equitable interest), *reaffirmed in In re Criswell,* 102 F.3d 1411, 1417 n. 27 (5th Cir.1997); *S.I. Acquisition, Inc. v. Eastway Del. Serv., Inc. (In re S.I. Acquisition, Inc.),* 817 F.2d 1142, 1150 n. 9 (5th Cir.1987). Given our disposition herein,

we need not decide whether property subject to an avoidance action is property of the estate.

**63.** *Valley Transit Mix v. Miller,* 928 F.2d 354, 356 (10th Cir.1991) ("The stay protects not only property of the estate but also prohibits 'any act to collect ... or recover a claim against the debtor.'" (quoting 11 U.S.C. § 362(a)(6))).

**64.** 3 *Collier on Bankruptcy* ¶ 362.03[8][c] (15th ed. rev.2002) (citing *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Sys., Inc.),* 108 F.3d 881 (8th Cir.1997)).

**65.** *Just Brakes,* 108 F.3d at 884 (quoting *Brown v. Armstrong,* 949 F.2d 1007, 1010 (8th Cir.1991)); *cf. Delgado Oil Co. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986) (only trustee can assert postpetition avoidance actions, and "[t]his special status enables the trustee to achieve an equality of distribution among ... creditors.").

thus violated § 362(a)(6) because it was attempting to collect its prepetition tax claims against the Debtors from the transferred property. Not only has it admitted that it was trying to collect from its prepetition tax claims, but the law authorizing the Postpetition Tax Liens shows that this must have been the case.

██ It is undisputed that the Postpetition Tax Liens were filed by the IRS pursuant to 26 U.S.C. § 6901, which allows it to collect the unpaid income taxes of a taxpayer by assessing liens against "a transferee of property ... of [the] taxpayer." [66] This section is a "procedural mechanism," allowing the IRS to impose a tax lien against a transferee of a taxpayer-debtor's assets for the purpose of holding the transferee liable for the transferred property under applicable law, such as fraudulent transfer law.[67] If the taxpayer-debtor's transfer of property is avoidable under applicable law, the transferee is liable to the IRS for the transfer and any interest as allowed by such law.[68]

Under this well-established law, therefore, the IRS's filing of the § 6901 Postpetition Tax Liens could only have been to hold the Nondebtor Insiders liable under applicable law for transfers made to them

by the Debtors, recover the transferred property, and apply any recovered property to the Debtors' prepetition income tax debts. This was an act to collect the Debtors' prepetition tax debt out of the property transferred to the Nondebtor Insiders and, as such, was done in violation of the stay under § 362(a)(6). Indeed, the IRS now contends that its Postpetition Tax Liens give it a secured interest in the property that the Trustee recovered for the benefit of the estate through the Fraudulent Transfer Judgment.[69] Its argument demonstrates that the Postpetition Tax Liens were filed to seek a postpetition advantage in collecting its prepetition claim against the Debtors—an act that is contrary to the very purpose of the stay imposed under § 362(a).

The IRS maintains that its Postpetition Tax Liens do not violate the automatic stay because it did not attempt to collect from the Nondebtor Insiders during the Debtors' cases. In making this argument, the IRS asserts that it has an independent cause of action against the Nondebtor Insiders that is in no way tied to the Debtors' transfer of property to them. This argument is contrary to § 6901 as outlined above, and to the IRS's admission that in filing the § 6901 Postpetition Tax Liens, it

---

**66.** Section 6901, which is entitled "Transferred Assets," states:

> (a) Method of Collection.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
>
> (1) Income, Estate, and Gift Taxes—
> (A) Transferees.—The liability, at law or in equity, of a transferee of property—
> (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),
> . . . .
> in respect of the tax imposed [on the taxpayer] by subtitle A or B.

26 U.S.C. § 6901(a)(1)(A)(i); *see id.* § 6901(h) (defining "transferee").

**67.** *Scott v. Commissioner,* 236 F.3d 1239, 1241 (10th Cir.2001); *see Commissioner v. Stern,* 357 U.S. 39, 42, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958) (predecessor to § 6901 "neither creates nor defines a substantive liability [against the transferee] but provides merely a new procedure by which the Government may collect taxes."); *United States v. Russell,* 532 F.2d 175 (10th Cir.1976).

**68.** *See, e.g., Stansbury v. Commissioner,* 102 F.3d 1088 (10th Cir.1996); *see also Stern,* 357 U.S. at 42, 78 S.Ct. 1047.

**69.** Appellant's Brief at 14.

was attempting to collect the Debtors' prepetition tax debts.

Accordingly, the IRS's admissions and the law discussed demonstrate that the IRS's filing of the § 6901 Postpetition Tax Liens was an act to collect the Debtors' prepetition tax debts in violation of § 362(a)(6). The bankruptcy court, therefore, did not err in voiding the IRS's Postpetition Tax Liens.

### III. *Conclusion*

For the reasons stated above, we HEREBY ORDER that:

(1) We shall RETAIN JURISDICTION over the portion of the Amended Judgment related to the IRS's interest in the Art;

(2) Within fifteen days of the filing of this Opinion, the IRS must file with this Court a Supplemental Appendix containing only (a) the Plaintiffs' Exhibits and (b) the Default Judgment in the Fraudulent Transfer Action, and serve the Supplemental Appendix on the Plaintiffs;

(3) After receipt and review of the contents of the Supplemental Appendix, this Court will file a Supplemental Order and Judgment, and a mandate in this appeal will issue immediately thereafter;

(4) The portion of the Amended Judgment related to the IRS's interest in the Stock is REVERSED; and

(5) The portion of the Amended Judgment related to the Postpetition Tax Liens is AFFIRMED.